UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| HANSANA VONGKAYSONE, ) | |
| ) | |
| ) | |
| v.                                                     ) | Criminal No. 04-43-P-S |
| ) | |
| ) | Civil No.   06-170-P-S |
| UNITED STATES OF AMERICA,   ) | |
| ) | |
| ) | |

## RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION

Hansana Vongkaysone was prosecuted by the United States for conspiracy to distribute and to possess with the intent to distribute cocaine and 50 grams or more of cocaine base in violation of 21 U.S.C. § 846, § 841(a)(1), and § 841(b)(1)(A). Pursuant to 21 U.S.C. § 851, the United States filed an information charging a prior felony drug conviction in Rhode Island. Just shy of seven months after being sentenced to 240 months of imprisonment – the low end of a term fixed by a statutory minimum -- the United States moved pursuant to Federal Rule of Criminal Procedure 35 for a substantial assistance reduction and the Court granted this motion, reducing Vongkaysone's sentence to 168 months.

Vongkaysone's 28 U.S.C. § 2255 motion is lengthy and the United States has done its best to dissect his various claims for relief. Although I extended Vongkaysone's time for filing a reply from January 29, 2007, to February 20, 2007, Vongkaysone has not filed anything in answer to the United States' response to his motion; he has not disputed its characterization of his claims or countered its argument as to why the motion should be summarily dismissed without an evidentiary hearing.

### Important Limitations Regarding 28 U.S.C. § 2255 Review and Vongkaysone's Burden as Movant

Vongkaysone is entitled to 28 U.S.C. § 2255 relief only if his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack" 28 U.S.C. § 2255 ¶ 1. With respect to this Court's review of Vongkaysone's § 2255 claims, summary dismissal is appropriate if his motion: "'(1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'" United States v. DiCarlo, 575 F.2d 952, 954 (1978)(quoting Moran v. Hogan, 494 F.2d 1220, 1222 (1st Cir.1974)). "Thus, the petition is subject to dismissal, without an evidentiary hearing, if the grounds for relief either are not cognizable under section 2255 or amount to mere 'bald' assertions without sufficiently particular and supportive allegations of fact." Barrett v. United States, 965 F.2d 1184, 1186 (1st Cir. 1992) (citing Moran, 494 F.2d at 1222).

Furthermore:

> "Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Reed v. Farley, 512 U.S. 339, 354 (1994) (internal citation omitted). The principles of finality, federalism, and comity inform the scope of habeas review. Sanna v. Dipaolo, 265 F.3d 1, 7 (1st Cir.2001) (citing Brecht v. Abrahamson, 507 U.S. 619, 633-35 (1993); Teague v. Lane, 489 U.S. 288, 308-10 (1989)). Accordingly, a defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence. Bousley v. United States, 523 U.S. 614, 622 (1998).

Berthoff v. United States, 308 F.3d 124, 127-28 (1st Cir. 2002).

Vongkaysone's 28 U.S.C. § 2255 motion requires that I address the Sixth Amendment standard governing the constitutional adequacy of counsels' representation, both with regards to Vongkaysone's straight-up ineffective assistance claims and with respect to his attempts to excuse his procedural default of grounds that could have been raised on direct appeal but which were not. The First Circuit summarizes a § 2255 movant's Strickland v. Washington, 466 U.S. 668 (1984) burden as follows:

> An ineffective assistance claim requires the defendant-who bears the burden of proof, Scarpa v. DuBois, 38 F.3d 1, 8-9 (1st Cir.1994)-to show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's failures, the outcome would likely have been different. Strickland v. Washington, 466 U.S. 668, 687 (1984); Cofske v. United States, 290 F.3d 437, 441 (1st Cir.2002)

Cirilo-Munoz v. United States, 404 F.3d 527, 530 (1st Cir. 2005). With respect to Vongkaysone's claims targeted at counsel's performance on direct appeal, "Because counsel is entitled to exercise professional judgment," Vongkaysone "must show that an attack on his sentencing enhancement on direct appeal 'was so obvious and promising that no competent lawyer could have failed to pursue it.'" Id. (quoting Arroyo v. United States, 195 F.3d 54, 55 (1st Cir.1999)).

## Prosecution Version

The other players in the conspiracy for which Vongkaysone was charged were Hoang Nguyen, Dung Lee, and Eddy Phanthai. Vongkaysone pled guilty to the conspiracy based on the following Prosecution Version:

> If the United States went to trial in this case, it would prove the existence of a conspiracy between Hansana Vongkaysone, Eddy Phanthai and others. The evidence would be that the conspiracy began in about October 2003 and continued until on or about January 12, 2004. The purpose of the conspiracy was to bring powder cocaine (otherwise known as "cocaine hydrochloride") and cocaine base (otherwise known as "crack" or "crack cocaine") from Rhode Island to Massachusetts and

3

Maine, for distribution in Maine. The conspiracy involved at least 1.5 kilograms of cocaine base and at least 3.5 kilograms of cocaine.

Specifically, between October 2003 and January 2004, DEA agents, with the assistance of a cooperating source, purchased crack cocaine on several occasions from Hoang Nguyen and Dung Le in Maine. On January 11, 2004, DEA S/A Buchanan received information that Nguyen was making a trip to Massachusetts to pick up crack cocaine. At S/A Buchanan's request, the Maine State Police stopped the vehicle they believed Nguyen was driving and found crack cocaine in the vehicle. The occupants of the vehicle were Hoang Nguyen and Dung Le. The substance found in the vehicle was sent to the DEA Laboratory for testing. The Laboratory report reflects that the substance contained cocaine base and weighed 57.5 grams.

Nguyen agreed to cooperate and told agents that he and Le had gone to Lowell that day and picked up the cocaine base that was found in the vehicle. He said that for approximately two months he had been selling cocaine base in Maine with Le and others. He indicated that they had been obtaining their cocaine base from an individual in Lowell who he only knew as "Little Boy." "Little Boy" was later identified as Eddy Phanthai. Nguyen further explained that for several months he, Le or one of their associates have been making trips to Lowell to purchase cocaine base from Phanthai.

On January 12, 2004, Nguyen made a recorded call to Phanthai and ordered two ounces of cocaine base. Nguyen and Phanthai agreed to meet in Lowell, Massachusetts that evening. Agents apprehended Eddy Phanthai when he arrived at the prearranged location in Lowell. Agents found crack cocaine in Phanthai's sweatshirt. The crack cocaine found in Phanthai's sweatshirt was sent to the DEA Laboratory for testing. The Laboratory report reflects that the substance contained cocaine base and weighed 55.1 grams.

On January 16, 2004, Phanthai agreed to cooperate with DEA. Phanthai admitted that he had been supplying several individuals from Maine with cocaine base, including Le and Nguyen. He said that they had been purchasing approximately 2 ounces of crack from him, three to four times a week, for at least three to four months. Phanthai explained that he has been buying 1/2 kilogram quantities of powder cocaine from a single source and that he would convert the powder cocaine to cocaine base, which he then sold to the individuals from Maine. Phanthai identified his source as an Asian male in his 30s from Rhode Island, whom Phanthai only knew as "Na," later identified as the defendant Hansana Vongkaysone. Phanthai explained that at one time he had been purchasing crack cocaine from Hansana Vongkaysone but that Hansana showed Phanthai how to convert powder cocaine into crack cocaine. From then on, Phanthai bought powder cocaine from Hansana Vongkaysone and converted it to crack himself. Phanthai said that he had made the cocaine

4

base that he had in his possession when he was arrested with powder cocaine that he had purchased from Na a few days before his arrest.

Between January 18 and January 21, 2004, Phanthai made several recorded telephone calls to Hansana Vongkaysone, during which he ordered 1/2 kilogram of cocaine. Hansana Vongkaysone and Phanthai agreed to meet on Thursday, January 22nd in Lowell Massachusetts. On January 22nd, the deal was postponed until Friday January 23, 2004. On Friday January 23rd Phanthai made a recorded telephone call to Hansana Vongkaysone during which Hansana agreed to meet Phanthai at 6:45 pm in Lowell at a Cambodian restaurant.

At 6:30 p.m. on January 23, 2004, DEA agents established surveillance at the Cambodian restaurant. At approximately 6:45 p.m., Hansana Vongkaysone and his cousin Phonthep Vongkaysone arrived at the Cambodian restaurant in a vehicle as planned. Agents approached their vehicle and removed Hansana Vongkaysone from the passenger side and Phonthep Vongkaysone from the driver side. Agents found cocaine in a shopping bag in a plastic bag on the floor of the passenger side of the vehicle. The cocaine found in the shopping bag was sent to the DEA Laboratory for testing. The Laboratory report reflects that the substance contained cocaine hydrochloride and weighed 499.4 grams. Hansana Vongkaysone and Phonthep Vongkaysone were transported to Lowell Police Department. Hansana Vongkaysone agreed to speak to agents and admitted that he had been delivering cocaine to Phanthai for approximately 6 months and that the cocaine found in the car was for Phanthai.

The relevant conduct in this case attributable to Hansana Vongkaysone, as defined in the United States Sentencing Commission Guidelines § 1B1.3, includes at least 15 kilograms of cocaine and at least 1.5 kilograms cocaine base.

(Prosecution Versions 1-4, Crim. No. 04-43-B-S, Docket No. 93.)

### Vongkaysone's 28 U.S.C. § 2255 Claims

*Vongkaysone's Apprendi/Blakely/Booker Challenge and His Related Ineffective Assistance of Counsel Claim as To Attorney Performance at Sentencing*

Vongkaysone devotes a third of his 28 U.S.C. § 2255 memorandum of law to different takes as to how his sentence and counsel's representation ran afoul of Apprendi v. New Jersey, 530 U.S. 466 (2000), Blakely v. Washington, 542 U.S. 296 (2004), and United States v. Booker, 543 U.S. 220 (2005). (See Sec. 2255 Mem. at 11-18.)

5

Vongkaysone believes that these precedents establish that it was impermissible for this Court to determine drug quantities and his role in the offense using a preponderance of the evidence standard. (Id. at 16.) He believes that at his sentencing[1] his attorney should have raised an Apprendi challenge as that decision was controlling authority at the time of his sentencing. (Id. at 18.)

In fact, all three of these decisions preceded Vongkaysone's sentencing. During the sentencing Vongkaysone's attorney explained vis-à-vis the relevancy of Apprendi/Blakely/Booker to Vongkaysone's case:

> As your Honor knows, during the . . . presentencing conference, we went over some of the factors. I discussed this at length with my client. Clearly these so-called enhancements are statutory, they have nothing to do with the Guidelines or the application of the Guidelines in that respect.
> So he understands the issues that have been raised in Blakely plus the Booker case and the other cases decided by the United States Supreme Court. So there is no question that he had a prior drug conviction, Your Honor, which you even asked him about under oath at the change of plea, and there is no question that there is a mandatory/minimum sentence based upon the amount of drugs here. So, there is really no room to maneuver, so to speak.
> I would just suggest, Your Honor, that obviously 20 years is a significant sentence under any set of circumstances for deterrent purposes, for punishment purposes, whatnot, and I would ask that Your Honor, even though the Guidelines are advisory, my understanding is that the Supreme Court says you are still suppose to look at them and perhaps comment in fashioning your sentence, but I would ask the Court to impose the minimum sentence in this case. Thank you.

(Jan. 25, 2005, Sentencing Tr. at 8-9.) On the immediate heals of this exchange the Court informed Vongkaysone of his right of allocation and Vongkaysone responded: "I just want to say I am very sorry what I did. That's all I have to say." (Id. at 9.) The Court then found that Vongkaysone was responsible for 1.5 kilograms of cocaine base, resulting

---

[1] Vongkaysone asserts that he raised this Apprendi/Blakely issue on direct appeal (id. at 16), but the United States explains that Vongkaysone's only direct appeal arguments pertained to the denial of the motion to suppress and the First Circuit Court of Appeals only addressed the suppression concerns in its decision on direct appeal.

6

in a base offense level of 38. (Id. at 9-10.) The Court increased the offense level by 2, finding that Vongkaysone was an organizer/leader/manager or supervisor of a criminal activity involving less than five participants (Id. at 10.) The Court reduced his offense level by three for acceptance of responsibility (Id.) The total offense level was 37, his criminal history category II, and the guideline range was 235 to 293 months (Id.)

As the United States points out, Vongkaysone's sentence was premised on the statutory mandatory minimum predicated on his former drug trafficking conviction. Apprendi expressly held that any fact that increases the penalty for a crime beyond the prescribed statutory maximum – other than the fact of a prior conviction – must be submitted on proof beyond a reasonable doubt to a jury, 530 U.S. at 466, 490, or, as Booker explained, be admitted to by the defendant, 543 U.S. at 244. See also United States v. Reyes-Echevarria, 345 F.3d 1, 7 (1st Cir. 2003) ("Because Reyes' sentence does not exceed that statutory maximum, Apprendi is not applicable, regardless of whether a sentencing factor increases the mandatory minimum sentence under either the statute or the Sentencing Guidelines.").

There was no Apprendi/Blakely/Booker infirmity in Vongkaysone's sentence and, it follows, no ineffective assistance for not raising this claim at sentencing (or on appeal).

*The Legality and the Constitutionality of the 21 U.S.C. § 851 Enhancement*

With regards to the legality and constitutionality of the 21 U.S.C. § 851 enhancement stemming from his prior Rhode Island conviction, Vongkaysone argues that the Court did not make a sufficient post-conviction, pre-sentence inquiry to satisfy 21 U.S.C. § 851(b).

Section 851, as applicable to Vongkaysone's challenge, reads:

7

> (a) Information filed by United States Attorney
> > **(1)** No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon. Upon a showing by the United States attorney that facts regarding prior convictions could not with due diligence be obtained prior to trial or before entry of a plea of guilty, the court may postpone the trial or the taking of the plea of guilty for a reasonable period for the purpose of obtaining such facts. Clerical mistakes in the information may be amended at any time prior to the pronouncement of sentence.
> > ....
> (b) Affirmation or denial of previous conviction
> If the United States attorney files an information under this section, the court shall after conviction but before pronouncement of sentence inquire of the person with respect to whom the information was filed whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence.

21 U.S.C.A. § 851(a)(1), (b).  The United States concedes that the Court did not fully advise Vongkaysone in accordance with subsection (b) (Gov't Resp. at 28), in that it did not inform him that any challenge to this prior conviction not made before imposition of the sentence could not be used to attack the sentence.

This is the first time Vongkaysone has raised this 21 U.S.C. § 851 challenge and it is a challenge that could have been raised at the time of sentencing or on direct appeal. See Prou v. United States, 199 F.3d 37, 45-47 (1st Cir. 1999).  The United States asserts that Vongkaysone is not arguing that counsel's failure to raise the issue at sentencing or on appeal constitutes ineffective assistance of counsel and the claim should be summarily dismissed.  (Id. at 29.)  However, Vongkaysone concludes his § 851 discussion in his 28 U.S.C. § 2255 memorandum by stating: "In light of the aforementioned argument, the

court, Government and <u>counsel</u> failed to comply with the strictures of § 851 and protect petitioner's rights." (Sec. 2255 Mem. at 23)(emphasis added). This sentence in Vongkaysone's memorandum must be construed to allege that his procedural default of this ground should be excused due to counsel's ineffective assistance during sentencing and on direct appeal. See <u>Bousley v. United States</u>, 523 U.S. 614, 622 (1998); see cf. <u>Prou</u>, 199 F.3d at 42.

As the United States sets forth in its response to the 28 U.S.C. § 2255 motion, after Vongkaysone pled guilty to the superseding indictment, the Court engaged in the following colloquy with Vongkaysone and his attorney:

> THE COURT: . . . There has been an information charging a prior conviction in this matter, that conviction for the record is dated April 28. Have you received a copy of that information?
> VONGKAYSONE'S ATTORNEY: Yes I have, your Honor. I reviewed that with my client, and my client would agree that is a final conviction. As a matter of fact my associate actually handled that matter a number of years ago, so there is no question about it.
> THE COURT: Mr. Vongkaysone, do you admit the allegations contained in that information
> regarding your prior conviction?
> VONGKAYSONE: Yes.
> THE COURT: That was you that was so convicted?
> VONGKAYSONE: Yes.

(Plea Tr. at 5-6.)

To establish ineffective assistance of counsel on this question in order to excuse his procedural default of this claim, Vongkaysone must demonstrate in this 28 U.S.C. § 2255 proceeding that "counsel's performance fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 687. The record before the court during the criminal proceedings and before the court in this collateral review provides no basis for concluding that counsel -- during the criminal proceedings or on appeal -- had <u>any</u> basis

9

for challenging the use of his Rhode Island conviction prior to proceeding with the sentence; thus, there would be little tactical advantage in counsel lodging a protest about the particular 28 U.S.C. § 851(b) infirmity in this case, either at the time of sentencing or on appeal. Rather, the record is that counsel was sure there was no basis to question the use of the prior conviction and Vongkaysone has not introduced any evidence to contravene this evidence. When a challenge such as Vongkaysone's is brought on direct appeal, the First Circuit Court of Appeals has concluded that defects in the § 851(b) colloquy are not jurisdictional and are subject to harmless error review. United States v. Romero-Carrion, 54 F.3d 15, 18 (1st Cir. 1995) ("All courts of appeals which have considered the question presently hold that failure to engage in the colloquy required by section 851(b) is subject to 'harmless error' analysis. … We are not persuaded to the contrary view urged by appellant.")(collecting cases).[2]

With respect to the grounds on which Vongkaysone might challenge his Rhode Island conviction, I recognize that in a subsection of his memorandum related to his 21 U.S.C. § 851 challenge, Vongkaysone states:

> At present petitioner is pursuing an appeal of his Rhode Island prior conviction as unconstitutional and invalid for enhancement purposes.
> The petitioner preserves his rights herein to amend and supplement this appeal once a ruling is provided by the **Rhode Island Superior Court**. In the event claim #6 is granted as it should, the **Rhode Island** conviction is valid only for criminal history points until vacated by the court.

(Id. at 24.) However, nowhere does Vongkaysone even suggest that he informed counsel of the grounds for this challenge prior to his sentence or appeal. Indeed, Vongkaysone nowhere provides any articulation of the constitutional grounds he has cited to the Rhode

---

[2]   Apropos the performance of defense counsel's § 851(b) obligations these are not in the same league as counsel's responsibility vis-à-vis prosecutorial § 851(a) short-falls, see Prou, 199 F.3d at 48.

10

Island courts. As the 28 U.S.C. § 2255 movant, the onus is on Vongkaysone. He has not carried that burden.

*Ineffective Assistance Claims*

> *Sentencing and Appellate Counsels' Failure to Raise Challenge to Relevant Conduct apropos Cocaine Base Sold by Others*

Vongkaysone insists that he was 'only' the source of the cocaine powder that the "Phanthai Organization" transformed into cocaine base and sold the base in Maine. (Sec. 2255 Mem. at 5.) He asserts that there is no evidence of a conspiracy on his part, only of his distribution. (Id.) Vongkaysone "maintains he was in no part in concert with the others in the distribution of cocaine base nor a conspiracy to do so." (Id. at 20.)

Asked by the Court at the change of plea hearing if anything in the Prosecution Version was not true, counsel explained:

> Your Honor, my client wishes to state on the record that while the Prosecution Version can be read perhaps in a couple of ways, it does indicate that the purpose of the conspiracy was to bring powder cocaine and base from Rhode Island to Massachusetts and then to Maine for distribution in Maine, my client insists that as far as the base is concerned at no time did he bring base from the State of Rhode island to the State of Massachusetts.

(Plea Tr. at 14-15.) On the immediate heels of this explanation by counsel, the Court asked: 'Does your client deny the conspiracy had a co-conspirator that brought powdered cocaine from Rhode Island?" (Id. at 15.) After counsel informed the court that Vongkaysone did not deny this, the Court asked Vongkaysone if everything in the prosecution version was true. (Id.) Vongkaysone answered: "True." (Id.) The Court found a factual basis for the guilty plea. (Id.)

Vongkaysone is challenging counsel's performance relating to the "relevant conduct" attribution of drugs to him. He does not now dispute that he "did sell the argued

11

quantity"; the only thing that Vongkaysone now presses regarding the attribution of drug quantity to him in support of this ineffective assistance claim is that once he sold the cocaine to the others they were acting independently. (Sec. 2255 Mem. at 1-2.) He cites to an application note to United States Sentencing Guideline 1B1.3 which reads:

> Defendant P is a street-level drug dealer who knows of other street-level drug dealers in the same geographic area who sell the same type of drug as he sells. Defendant P and the other dealers share a common source of supply, but otherwise operate independently. Defendant P is not accountable for the quantities of drugs sold by the other street-level drug dealers because he is not engaged in a jointly undertaken criminal activity with them. In contrast, Defendant Q, another street-level drug dealer, pools his resources and profits with four other street-level drug dealers. Defendant Q is engaged in a jointly undertaken criminal activity and, therefore, he is accountable under subsection (a)(1)(B) for the quantities of drugs sold by the four other dealers during the course of his joint undertaking with them because those sales were in furtherance of the jointly undertaken criminal activity and reasonably foreseeable in connection with that criminal activity.

U.S.S.G. 1B1.3 illustration (c)(6).

The First Circuit Court of Appeals explained in United States v. Laboy:

> Drug quantity determinations are not limited to the amounts involved in the offense of conviction. Rather, a defendant may be held responsible for drug quantities involved in his "relevant conduct." U.S.S.G. § 1B1.3. Such conduct may include a defendant's own acts or the acts of others: the sentencing guidelines provide responsibility for the acts of others in the case of "jointly undertaken criminal activity", which includes any "criminal plan, scheme, endeavor or enterprise undertaken by defendant in concert with others." U.S.S.G. § 1B1.3(a)(1)(B). The guidelines state that a defendant may be held responsible for
>> all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.
>
> Id. In the case of controlled substances, the defendant is responsible for "all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." U.S.S.G. § 1B1.3, cmt. (n.2). Thus, a drug dealer who engages in criminal activity with others to further their collective interests may be held liable for the quantities of drugs sold by his partners, if those sales were a reasonably foreseeable consequence of the jointly undertaken actions.

12

>        This type of liability, however, has its limit: mere knowledge of another's activity is not enough to show liability under U.S.S.G. § 1B1.3. Rather, "the central concept ... is foreseeability." United States v. O'Campo, 973 F.2d 1015, 1023 (1st Cir.1992). The defendant is only responsible for foreseeable conduct within the scope of his own explicit or implicit agreement. See, e.g., United States v. Carrozza, 4 F.3d 70, 76 (1st Cir.1993)("So as to keep the criminal responsibility within bounds, § 1B1.3 requires sentencing courts to ascertan on an individual basis the scope of the criminal activity that the particular defendant agreed jointly to undertake."); United States v. Innamorati, 996 F.2d 456, 488-89 (1st Cir.1993)("[E]ach member of a drug conspiracy may be held accountable at sentencing for a different quantity of narcotics, depending on the circumstances of each defendant's involvement."). While a conspiracy charge may encompass all acts by co-conspirators in furtherance of the conspiracy, see Pinkerton v. United States, 328 U.S. 640, 647 (1946), "relevant conduct" is limited to the foreseeable acts resulting from the defendant's particular agreement. Thus, the scope of relevant conduct is "not necessarily the same as the scope of the entire conspiracy." U.S.S.G. § 1B1.3, cmt. (n.2).

351 F.3d 578, 582 -83 (1st Cir. 2003) (footnote omitted).

So the question is whether counsel had grounds to challenge at sentencing and on appeal the foreseeability of the drug activity of the others. During the change of plea hearing the following exchange took place:

> THE COURT: Has your attorney explained to you the possible penalties that I may impose on you?
> VONGKAYSONE: Yes.
> THE COURT: [Defense Counsel], are you satisfied that your client understands the charge contained in the superseding indictment as well as the possible penalties that may be imposed upon him?
> VONGKAYSONE'S ATTORNEY: Yes, your honor. I have gone over this many, many times with my client. He fully understands and he asked me numerous questions and I have answered all of those; he understands fully.
> THE COURT: [Defense Counsel], does your client understand that by admitting and pleading guilty to this indictment <u>he is also admitting the relevant conduct allegations contained in this indictment</u>?
> VONGKAYSONE'S ATTORNEY: That is correct, your Honor, I have also explained that to him.
> THE COURT: Do you understand all that Mr. Vongkaysone?
> VONGKAYSONE:   Yes.

(Plea Tr. at 8) (emphasis added).

Vongkaysone's current argument is that the facts that he admitted do not support the Court's legal determination of foreseeability; nothing in Vongkaysone's pleadings suggests that counsel had facts at his disposable or that were discoverable that might have changed this Court's mind or garnered review by the First Circuit.

### *Sentencing and Appellate Counsels' Failure to Challenge the Application of the Role in the Offense Organizer or Leader Enhancement*

Vongkaysone complains that neither during sentencing nor on appeal did his counsel challenge the two point enhancement for being an organizer or leader in the conspiracy. (Sec. 2255 Mem. at 6.) He explains that the other players in the conspiracy were Nguyen, Lee, and Phanthai and that none of the proffers by these individuals contain "language indicating supervisory power or control" by Vongkaysone; they "never stated they had followed any instructions on how or where to sell drugs, or for that matter, no orders of pricing or percentages relating back" to Vongkaysone. (Id. at 6-7.) Vongkaysone maintains: "An overview of the D.E.A. reports made by special agent Paul C. Buchanan clearly indicate that Nguyen was the leader organizer of Lee and others who were runners for him. The petitioner was merely a source of supply." (Id. at 7.)

Vongkaysone's role-in-the-offense adjustment addresses "concerns of relative responsibility." United States v. Cruz, 120 F.3d 1, 3 (1st Cir. 1997) (en banc) (citing USSG § 3B1.1(c), comment. (backg'd)). "In this vein,"

> the guideline provides, among other things, that "if the defendant was an organizer, leader, manager, or supervisor in any criminal activity" involving one to three other participants, the offense level should be increased by two levels. USSG § 3B1.1(c). Such an increase is justified if the sentencing court supportably finds that (1) the criminal enterprise involved at least two complicit participants (of whom the defendant may be counted as one), and (2) the defendant, in committing the offense, exercised control over, organized, or was otherwise responsible for superintending the activities of, at least one of those other persons. See [United States v.] Morillo, 8 F.3d [864,]872 [(1st Cir. 1993); United States v.

> Savoie, 985 F.2d 612, 616 (1st Cir.1993); United States v. Akitoye, 923 F.2d 221, 227 (1st Cir.1991). The government bears the burden of proving that a defendant qualifies for an upward role-in-the-offense adjustment, and must carry that burden by a preponderance of the evidence. See United States v. Voccola, 99 F.3d 37, 44 (1st Cir.1996); United States v. Ortiz, 966 F.2d 707, 717 (1st Cir.1992).

Id.

As Vongkaysone does not really contest that his counsel, when addressing sentencing concerns, failed to press different or additional facts that could have been or were at his disposable that might controvert a preponderance of the evidence role-in-the-offense determination, the question is whether or not counsel had a viable legal argument based on the admitted facts to argue against the adjustment. This Court has already made this legal determination based on the admitted facts.

> I add, with respect to counsel's performance on direct appeal,
>
>> The determination that a given set of facts justifies application of the enhancement is "entitled to considerable deference and must stand unless clearly erroneous." United States v. Brown, 298 F.3d 120, 122 (1st Cir.2002). Thus, the battle over the enhancement "will almost always be won or lost in the district court." United States v. Santos, 357 F.3d 136, 142 (1st Cir.2004).

United States v. Monteiro, 417 F.3d 208, 212 (1st Cir. 2005). Clearly the attack was not "'so obvious and promising that no competent lawyer could have failed to pursue it.'" Cirilo-Munoz, 404 F.3d at 530 (quoting Arroyo v. United States, 195 F.3d 54, 55 (1st Cir.1999)).

### *Counsel's Failure to Investigate*

Vongkaysone faults his attorney during the plea stage of the proceedings for not conducting an independent investigation into the facts of his case and the applicable law concerning Vongkaysone's role in the offense. (Sec. 2255 Mem. at 10.) As the United States points out, nowhere does Vongkaysone even hint at what this independent

15

investigation or legal research could have uncovered let alone explain how it would have altered the outcome of his case. See Barrett, 965 F.2d at 1186.

### *Conclusion*

As reasoned above, I recommend that the Court summarily deny Vongkaysone's 28 U.S.C. § 2255 relief.

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

March 19, 2007

/s/Margaret J. Kravchuk
U.S. Magistrate Judge